```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

```
UNITED STATES OF AMERICA,       (
                                (
     Plaintiff,                 (
                                (    Cv. No. 05-02467-JDB-dkv
vs.                             (    Cr. No. 03-20439-JPM
                                (
JAMIE C. SHERROD,               (
                                (
     Defendant.                 (
                                (
```

(CORRECTED)ORDER DENYING APPLICATION TO PROCEED <u>IN</u> <u>FORMA</u> <u>PAUPERIS</u>
      ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
         ORDER DENYING CERTIFICATE OF APPEALABILITY
                              AND
       ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Defendant Jamie C. Sherrod, Bureau of Prisons registration number 19305-076, an inmate at the United States Penitentiary in Beaumont, Texas, has filed a <u>pro</u> <u>se</u> Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence and an application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>. Because there is no filing fee associated with the filing of a motion pursuant to § 2255, the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is DENIED. For the reasons stated below, Defendant's § 2255 motion is DENIED.

I.   BACKGROUND

On November 25, 2003, a federal grand jury in the Western District of Tennessee returned a two-count indictment charging Defendant with being a felon in possession of a firearm (count one), in violation of 18 U.S.C. § 922(g), and possession with intent to distribute heroin (count two), in violation of 21 U.S.C. § 841. On

February 27, 2004, Defendant entered a plea of guilty to the felon in possession charge of count one. On May 27, 2004, this Court, the Honorable Jon Phipps McCalla, sentenced Defendant to 110 months' imprisonment, three years of supervised release, and a special assessment of $100.00. Judgment was entered on June 2, 2004. Defendant did not appeal.

## II.   TIMELINESS OF THE § 2255 MOTION

The Court will first consider the timeliness of Defendant's motion. Paragraph 6 of 28 U.S.C. § 2255 provides as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Nothing in the record indicates that the running of § 2255's statute of limitations has been triggered by any event other than the finality of Defendant's conviction. Thus, in order to assess the timeliness of Defendant's motion, the Court must determine when his conviction became final.

2

"[F]or purposes of collateral attack, a conviction becomes final at the conclusion of direct review." Johnson v. United States, 246 F.3d 655, 657 (6th Cir. 2001)(citations omitted). "[W]hen a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final either on the date that the judgment was entered, or on the date on which the time for filing such appeal expired." United States v. Cottage, 307 F.3d 494, 499 (6th Cir. 2002)(citations omitted). The ten-day period for filing a notice of appeal mandated by Fed. R. App. P. 4(b)(1)(A) begins on the date the district court enters its judgment, not the date of sentencing. Id. at n.4. In this case, assuming that the date marking the expiration of the ten-day appeal period is controlling, judgment was entered on June 2, 2004, and, excluding the subsequent weekends, see Fed. R. App. P. 26(a), the ten-day appeal period concluded on June 16, 2004. Thus, § 2255's one-year limitations period commenced running on June 17, 2004, and expired one year later on June 16, 2005. Defendant's motion was filed, at the earliest, on June 23, 2005, the date he signed the in forma pauperis affidavit he submitted with his motion.[1] It therefore appears that Defendant's motion is time-barred.

The Supreme Court's recent decision in Day v. McDonough, 126 S.Ct. 1675, 1684 (2006), authorizes district courts to raise the

---

[1] A § 2255 movant's signing of the motion and delivery to prison officials for mailing is the earliest point at which the motion can be deemed "filed" for purposes of the one-year limitations period. Houston v. Lack, 487 U.S. 266, 270-71 (1988). See also Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999)(applying Houston and concluding that, because motion to vacate was signed under penalty of perjury on the day before the expiration of the limitations period, it was likely delivered to prison officials for mailing before the deadline).

statute of limitations <u>sua sponte</u>. However, district courts must afford the parties notice and an opportunity to be heard. <u>Id.</u>[2]; <u>see also</u> <u>Reichert v. United States</u>, 101 Fed.Appx. 13, 14 (6th Cir. 2004)("This court has concluded that a district court can dismiss a habeas petition sua sponte on the basis of the statute of limitations, but the court should first provide the petitioner with notice and an opportunity to be heard prior to the dismissal."). In this case, despite the apparent untimeliness of Defendant's motion, the Court need not impose the statute of limitations bar <u>sua sponte</u> because, as discussed below, the motion is plainly devoid of merit.

### III. CLAIMS ASSERTED IN THE MOTION

Defendant's motion is in the general form of a memorandum, and, in four separately numbered sections titled "Argument," appears to present the following claims:

a. that, by virtue of having filed his motion, he is entitled to a full evidentiary hearing on the matters asserted in the motion;

b. that he was denied his Sixth Amendment right to counsel from the time of his arrest until December 17, 2003;

c. that the government violated the rules of discovery when it failed to disclose, in its response to Defendant's Rule 16 discovery request, that the federal government lacked jurisdiction to prosecute him on the charges in the indictment; and

d. that counsel rendered ineffective assistance in failing to have Defendant "evaluated on his mental background, history" because the results of such an

---

[2] Although <u>Day</u> involved a state prisoner's petition pursuant to 28 U.S.C. § 2254, there appears to be no reason not to apply the same rule to § 2255 federal prisoners.

       evaluation would have provided grounds for a downward departure pursuant to U.S.S.G. § 5K2.

**IV.  ANALYSIS**

  **A.  Need for a Hearing (Argument #1)**

Defendant appears to contend that he is entitled to a hearing on his motion to vacate pursuant to the "supervisory authority of the Supreme Court." Defendant's "Affidavit, Motion, and Notice For Leave to File The Great Writ of Liberty, or in the alternative 28 U.S.C. § 2255 To Vacate, Set Aside or Correct Illegal Sentence" ("Defendant's § 2255 Motion"), no. 05-2467, doc. no. 1 at 3. However, the Supreme Court has never held that an evidentiary hearing is required for every § 2255 motion. Rather, "[w]here a § 2255 motion and the files and records of the case conclusively show that the moving party is entitled to no relief, the court is not required to serve notice of the motion on the United States attorney, and no hearing of any kind is required." <u>Green v. United States</u>, 65 F.3d 546, 548 (6th Cir. 1995). Thus, the Court will conduct a hearing in this matter only if necessary to resolve a disputed issue of material fact that is integral to the Court's judgment of the merits of the motion. Because each of Defendant's claims in support of his motion to vacate are without merit, no hearing is required in this instance. Accordingly, this claim is DENIED.

  **B.  Denial of the Assistance of Counsel (Argument #2)**

Defendant alleges as follows:

    On December 10th, 2003, a Rule 16 Discovery was requested by this Defendant In Error who was without Sixth Amendment to the Constitution's Mandate Guarantee

5

> to the Right of the Effective Assistance of Counsel, notwithstanding counsel was Demanded at the time of Arrest but was not assigned until December 17th, 2003. This Defendant In Error has been denied his inalienable and unimpeachable Constitutional Right to the Due Process Clause. In Re Winship, 397 U.S. 358 (1970).

Defendant's § 2255 Motion 3.

Defendant's claim that he has denied his Sixth Amendment right to counsel is both factually and legally inaccurate. Defendant requested counsel at his December 2, 2003, initial appearance before Magistrate Judge James Allen. The Court then ordered the appointment of counsel pursuant to the Criminal Justice Act ("CJA"). Defendant was represented by counsel at his December 5, 2003, arraignment. Thus, Defendant was represented by counsel at the time of his December 10, 2003, "Rule 16 Discovery" request. It is immaterial that the CJA form marking counsel's appointment was not entered until December 17, 2003. "The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. United States, 540 U.S. 519, 523 (2004)(quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)). Here, counsel was promptly appointed upon Defendant's request at his initial appearance, and his allegation that he was without counsel at the time of his first discovery request is plainly refuted by the record. Accordingly, Defendant's claim that he was denied his Sixth Amendment right to counsel is DENIED.

**C. No Federal Jurisdiction (Argument #3)**

Defendant alleges that

6

> [o]n December 18th, 2003 a Rule 16 Discovery Request as to this Defendant in Error and exculpatory evidence and 'Jencks Act' material by way of Fraudulent Conveyances and Designation of Active Concealment as Government's Attorney failed to disclose that Defendant In Error was being prosecuted without Government's Attorney having to obtain proof that United States of America did possess jurisdiction over the place where the alleged criminal offense took place in pursuant to Article I, Section VIII, Clause XVII of the United States Federal Constitution's Mandate.

Defendant's § 2255 Motion at 3-4. Following this allegation, Defendant's brief sets forth a lengthy and convoluted argument about the federal government's alleged lack of jurisdiction to prosecute him for the offense to which he pled guilty. The gist of Defendant's position appears to be that, because the place where he committed the crime is not "federally owned and operated," there is no federal jurisdiction. Rather, he contends, the State of Tennessee is vested with exclusive sovereign authority to police the area, purported to be a location on a street in the City of Memphis, where he committed the instant offense. Defendant maintains that this claim is not defaulted, despite the fact that he did not present this objection at trial or on appeal, because the defense that the indictment fails to state a crime cannot be waived.

Putting aside Defendant's clear default of this claim, it is nonetheless plainly devoid of merit for numerous reasons. First, there is no requirement in 18 U.S.C. § 922(g) that Defendant commit the offense of being a felon in possession of a firearm on federal land. See United States v. Yannott, 42 F.3d 999, 1004 (6th Cir. 1994)(stating that 18 U.S.C. § 922(g) is a law of "general applicability that make[s] certain actions criminal regardless of

7

where they are committed. . . . The situs of the crime is clearly not an element of a violation of" the statute).  Second, because Congress' establishment of a criminal violation in § 922(g) is a valid exercise of its commerce power, see United States v. Loney, 331 F.3d 516, 524 (6th Cir. 2003), this Court was vested with subject-matter jurisdiction over Defendant's prosecution pursuant to 18 U.S.C. § 3231, which grants district courts with exclusive and original jurisdiction "of all offenses against the laws of the United States."  Under these principles, the Sixth Circuit has flatly rejected similar challenges to federal jurisdiction over a charged violation of a federal criminal statute.  See United States v. Hamilton, 263 F.3d 645, 655-56 (6th Cir. 2001)("This is a frivolous argument that ignores the basic principles of federalism. The fact that Kentucky has sovereignty within its boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute Hamilton for federal crimes occurring within those same boundaries."); United States v. Bryson, 14 Fed.Appx. 316, 317 (6th Cir. 2001)("The district court undisputedly had subject matter jurisdiction over his indictment for violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c).  Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231; the permission of the states is not a prerequisite to exercise that jurisdiction.").  Thus, Defendant's claim that the federal government lacked jurisdiction to prosecute him, and that the U.S. Attorney should have disclosed as much in his

response to Defendant's discovery requests, is clearly without merit.  Accordingly, this claim is DENIED.

### D. Ineffective Assistance of Counsel

#### 1. Applicable Legal Standards

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):[3]

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy

---

[3] Although Strickland involved a habeas petitioner's attack on his state-court conviction and death sentence, the test for ineffectiveness articulated by the Supreme Court also applies in collateral attacks on noncapital sentences.  See Glover v. United States, 531 U.S. 198, 202-03 (2001)(reversing Seventh Circuit's determination that counsel's error, resulting in a sentence of an additional six to twenty-one months of prison, failed to satisfy the prejudice prong of Strickland); Arredondo v. United States, 178 F.3d 778, 783 (6th Cir. 1999)(explaining, prior to Glover, that "[a]lthough the Supreme Court has never expressly extended the *Strickland* standard to noncapital sentencing, we have applied it in that context.").

> for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999)("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss.  That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983)("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'")(citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697.  If a reviewing court finds a lack of

prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

In the context of a guilty plea, in order to demonstrate prejudice flowing from counsel's deficient performance, a petitioner must show that "there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

11

### 2. Application

Defendant alleges that counsel was ineffective for failing to have him "evaluated on his mental background, history. When he failed to obtain documents from the State of Tennessee, that showed Petitioner was mentally retarded. Which if was brought to the sentencing judge's attention would have gave him the discretion to lower Petitioner's sentence under U.S.S.G. 5K2.0." Defendant's § 2255 Motion at 14. Sherrod then quotes what appears to be four paragraphs from the Presentence Investigation Report ("PSR"), which detail various mental and emotional tests performed on him while he was a juvenile. He does not allege how any evaluation at the time of sentencing would have altered the outcome of his sentencing other than to assert that the Court could have departed downward based on his alleged mental retardation.

The facts elucidated in the PSR were already before the Court at sentencing. Thus, counsel cannot be deemed constitutionally deficient for failing to "obtain documents from the State of Tennessee" related to the circumstances set forth in the PSR. Defendant has also failed to demonstrate prejudice because nothing in the mental and emotional history portion of the PSR suggests that a downward departure from Defendant's guideline range for diminished mental capacity, pursuant to U.S.S.G. § 5K2.13, would have been appropriate. Likewise, additional "evaluations" of Defendant would have been both superfluous and futile given the findings in the PSR and the Court's own ascertainment of Defendant's capacity at the plea colloquy. Thus, counsel was not ineffective for failing to

have Defendant "evaluated" on his mental and emotional background where a sufficient record of Defendant's mental and emotional history was already before the Court at sentencing. Accordingly, this allegation of ineffectiveness is DENIED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Section 2255 Rules. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and, therefore, his motion pursuant to § 2255 is DENIED.

**V. APPELLATE ISSUES**

Consideration must be given to issues that may arise if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced

13

in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the

14

debatability of the underlying constitutional claim, not the resolution of that debate.").[4]

In this case, the Defendant's claims are clearly without merit for the reasons previously stated. Because he cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952.[5] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

---

[4] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[5] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

15

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. Accordingly, if Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 13th day of April, 2007.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE